Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 5220 | DATE | 11/18/2004 |
| CASE TITLE | NOVAK, ET AL vs. CITY OF GENEVA, ET AL | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Motion (41-1) for partial summary judgment is granted. Motion (53-1) for partial summary judgment is denied. Enter memorandum opinion and order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | NOV 19 2004 date docketed | |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| DW | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

THOMAS F. NOVAK, et al.,

    Plaintiffs,

v.

CITY OF GENEVA, et al.,

    Defendants.

No. 02 C 5220
Judge James B. Zagel

FILED
9 2004

## MEMORANDUM OPINION AND ORDER

**I. Background**

This suit arises out of a long standing zoning dispute over the operation of a drive-through window at Plaintiffs' Wendy's restaurant located at 200 North Kirk Road within a B-1 zoned business district of the City of Geneva ("the City"). On March 26, 1999, Plaintiff Thomas Novak filed an application for a Special Use permit to allow for the operation of a drive-through window at his Wendy's restaurant. In areas designated as B-1 business districts, drive-through windows, like all other designated Special Uses, are allowed if the applicant can establish that the following Special Use Standards have been met:

1. The proposed use at the specified location is consistent with the comprehensive plan.
2. The proposed building or use will not diminish the value of adjacent and nearby properties.
3. The proposed use at the specified location will not substantially or unduly increase traffic, traffic congestion and on-street parking demand in the immediate vicinity of the proposed use and in the area affected by traffic generated by the proposed use.
4. The proposed use has been designed to provide for adequate ingress and egress to minimize potential vehicle conflicts and congestion in public streets.
5. The proposed building or use will not adversely affect or change the character of the areas in which it is located.
6. The proposed use at the specified location will not adversely affect the use and development of adjacent and nearby properties in accordance with the regulations

of the district in which they are located. The location, size and height of proposed buildings and other structures and the operation of their use will not adversely affect the use and development or hinder the appropriate development of adjacent and nearby properties.
7. Adequate utility, drainage, parking and other necessary facilities to service the proposed use will be provided and that such utility, drainage, parking and other necessary facilities will not adversely affect the use, development and value of adjacent and nearby properties.
8. The proposed building, other structures and use comply with any and all regulations, conditions or requirements of the City of Geneva applicable to such building, structure or use.
9. That the exterior architectural appeal and function of any proposed structure will not be so at variance with either the exterior architectural appeal or functional plan of the structures already constructed in or in the course of construction in the immediate neighborhood or the character of the applicable district to cause a substantial depreciation in property values in the neighborhood.

(City of Geneva Zoning Ordinance § 1002.2)

In accordance with its zoning procedures, the City held public hearings on May 10, 1999, June 28, 1999, July 8, 1999, and July 22, 1999 to discuss the merits of the proposed drive-through window. During those meetings, the public and the City's Plan Commission voiced numerous concerns over the operation of a drive-through window at a location which they considered to be in close proximity to the Glengarry residential subdivision. In early August 1999, Plaintiffs' Special Use application made its way to and was approved by the City Council. This approval, however, was ultimately repealed because of procedural irregularities.

Following the repeal, Plaintiffs resubmitted an application and started the process over again. Plaintiffs' second application met with the same opposition as the first. After considering evidence submitted by Novak, the Plan Commission Staff, and the public, the Plan Commission recommended approval of the Special Use permit with restrictions that included limitations on truck access/parking and hours of operation. The City Council reviewed the record, accepted the

Plan Commission's finding, and approved the Special Use permit with the recommended restrictions. The City Council agreed with the Planning Commission's finding that the conditions levied on the approval were necessary to bring the drive-through window into compliance with the nine Special Use Standards stated in the City's Zoning Code.

On June 18, 2001, almost two years after the Wendy's had been constructed, Plaintiffs filed a petition with the City requesting that some of the conditions be repealed. Specifically, Plaintiffs requested that the limitations on store hours and truck access/parking be lifted. In order to show that the restrictions were not required to meet the Special Use Standards, Plaintiffs submitted late night car counts and traffic studies from areas around Plaintiffs' Geneva and West Chicago Wendy's franchises, real estate sales reports on homes in the Glengarry subdivision, and affidavits of local residents stating that the surrounding area was commercial when they purchased their properties.

During a hearing held on August 9, 2001, the Plan Commission reviewed the new evidence submitted by Plaintiffs and heard testimony from the Plan Commission staff members who were of the opinion that the newly submitted evidence, which they found to be limited in scope and largely historical, did not establish that the drive-through window could meet the Special Use Standards without the hours of operation and truck access/parking restrictions. The Plaintiffs countered by arguing that other similar restaurants in the area, namely Burger King and McDonald's, as well as a nearby bank and gas station were permitted to operate drive-through businesses without similar restrictions.

On September 13, 2001, the Plan Commission held a meeting and recommended denial of Plaintiffs' request to lift the Special Use restrictions. This recommendation was voted upon

and adopted by the City Council. In making its denial, the City Council stated that the drive-through window could not comply with the City's nine Special Use Standards without the disputed restrictions. Specifically, the City Council found that Plaintiffs had not presented sufficient evidence establishing the value of nearby property would not be diminished (Standard 2), traffic and on-street parking would not be increased (Standard 3), there would be adequate ingress and egress from the property (Standard 4), the character of the neighborhood would not be affected (Standard 5), and parking facilities were adequate to accommodate the requested changes (Standard 7). (Geneva Resolution No. 2001-29).

In response to the City Council's denial, Plaintiffs filed suit in the Sixteenth Judicial Circuit Court of the State of Illinois in Kane County. Pursuant to 28 U.S.C. § 1331 and § 1441, the City removed the case to this court. In their First Amended Complaint, Plaintiffs allege that Defendants violated Illinois's Freedom of Information Act, the Civil Rights Act, Plaintiffs' substantive due process rights, and Plaintiffs' equal protection rights. Plaintiffs are also seeking judicial review of the City Council's denial or, in the alternative, a declaratory judgment by this court that the City's Zoning Code is invalid as applied to Plaintiffs.

## II. Legal Analysis

### A. Standard of Review

Currently before me are Plaintiffs' and Defendants' cross motions for summary judgment on Count VII of Plaintiffs' Complaint in which Plaintiffs are seeking review of the City Council's 2001 decision not to lift the restrictions imposed on Plaintiffs' 1999 Special Use permit. Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317,

4

322-323 (1986). In determining whether any genuine issue of material fact exists, I must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A genuine issue of fact exists only when, based on the record as a whole, a reasonable jury could find for the non-movant. *Pipitone v. United States*, 180 F.3d 859, 861 (7th Cir. 1999).

### B. Common Law *Writ of Certiorari*

The sole method for seeking review of the City Council's decision is through a common law *writ of certiorari*. *People ex rel. Klaeren v. Vill. of Lisle*, 781 N.E.2d 223 (Ill. 2002). "A common law *writ of certiorari* is a general method for obtaining circuit court review of administrative actions when the act conferring power on the agency does not expressly adopt the Administrative Review Law and provides for no other form of review." *Hanrahan v. Williams*, 673 N.E.2d 251, 253 (1996). Whether review is sought under the common law *writ of certiorari* or under the Administrative Review Law, the standards to be applied are the same. As a general rule, the agency's factual findings are deemed *prima facie* true and correct and should not be disturbed unless they are contrary to the manifest weight of the evidence. *Scadron v. Zoning Bd. of Appeals of the City of Chicago*, 637 N.E.2d 710, 713 (Ill. App. Ct. 1994). A decision is against the manifest weight of the evidence when, viewing the evidence in the light most favorable to the agency, no rational trier of the fact could have agreed with the agency's determination. *Id.*

### C. Jurisdiction

A federal district court may properly review an administrative finding by a state body, under its supplemental jurisdiction, so long as the state claim can satisfy the relatedness

requirements of 28 U.S.C. § 1367(a). *Chicago v. International Coll. of Surgeons*, 522 U.S. 156, 165 (1997); *See Also Schullo v. The Town of Cicero*, No. 97 C 6456, 1998 U.S. Dist. LEXIS 11354 at *14-16 (N.D. Ill. July 17, 1998). For the state and federal claims to be sufficiently related to satisfy § 1367(a), they must arise out of the same nucleus of operative facts. *Id.*

Here, this court has original jurisdiction over Plaintiffs' claims alleging violations of their substantive due process and equal protection rights (Counts III and IV) and violations of the Civil Rights Act, 28 U.S.C. § 1983 (Counts V and VI). 28 U.S.C. § 1331. Since these constitutional and federal claims are derived from the same nucleus of operative facts as Plaintiffs' petition for a common law *writ of certiorari* (Count VII), namely the City's decision not to lift the restrictions from Plaintiffs' Special Use permit, I may properly assert supplemental jurisdiction over that claim. 28 U.S.C. § 1367(a). I say that I may assert because there is no requirement for me to do so. However, in this particular case, I conclude that granting supplemental jurisdiction best serves the principles of economy and convenience, which underlie the pendant jurisdiction doctrine codified in the supplemental jurisdiction statute.

### D. The Special Use Standards

That being said, I move on to the substantive consideration of Plaintiffs' and Defendants' motions for summary judgment. The arguments in both Plaintiffs' and Defendants' motions center on whether the City Council's decision not to lift the truck access/parking and hours of operation restrictions was against the manifest weight of the evidence.[1] Plaintiffs contend that

---

[1] I read Plaintiffs' petition for a common law *writ of certiorari* in Count VII of their Complaint to be limited to the City Council's September 2001 decision not to repeal its initially imposed restrictions. While Plaintiffs discuss the lengthy process associated with obtaining the initial permit in 1999, it appears to be given as background information only. Even if Plaintiffs had stated a claim for review of the Council's 1999 decision, I would not consider it, as the six-

they brought sufficient evidence forward, during the public hearing process, to demonstrate conclusively that the Wendy's drive-through window met the nine Special Use Standards without the applied restrictions.[2] Defendants, on the other hand, argue that the evidence produced by Plaintiffs fell short of showing that Standards 2, 3, 4, 5, and 7 could be met.

To begin with, Plaintiffs argue that the City Council's refusal to repeal its hours of operation and truck access/parking restrictions was improperly based on factors not embodied in the City's Zoning Code. Plaintiffs claim that the City Council's decision was based on a finding that the Wendy's drive-through window was neither in balance nor compatible with the business district in which it was located. Plaintiffs argue that the use of compatibility and harmony in zoning decisions concerning Special Use permits is improper under *Chicago Heights v. Living Word Outreach Full Gospel Church & Ministries, Inc.*, 749 N.E.2d 916 (Ill. 2001). In *Living Word*, the City of Chicago Heights ("Chicago Heights") denied the defendant church's Special Use permit because it found all non-commercial uses to be incompatible with its comprehensive

---

month limitations period generally associated with a common law *writ of certiorari* has long since expired. *Holstein v. Chicago*, 803 F. Supp. 205, 210 (N.D. Ill. 1992).

[2] Plaintiffs also argue briefly that the City does not have the authority, under Illinois law or under its own Zoning Code, to regulate the hours of operations and truck access/parking. However, the City is authorized through its Zoning Code to make any such restrictions on a Special Use permit it feels are necessary to "to make the Special Use more compatible with the use, enjoyment and development of adjacent and nearby properties, to make the Special Use more compatible with the character of the area in which it is located and to eliminate any adverse affect on adjacent and nearby properties and neighborhoods." (Geneva Zoning Ordinance 1002.2(H)). The City is also expressly authorized by the Illinois Municipal Code to regulate hours of operation if it is deemed necessary in the interest of public health, welfare, and safety. *Bi-Lo Stations, Inc. v. Alsip*, 318 N.E.2d 47, 50 (Ill. App. Ct. 1974). The City is vested "with broad discretion to determine not only that the public interest and welfare require, but what measures are necessary to secure such interests." *Id.* Additionally, the restrictions on truck access/parking were applied to the City streets surrounding the Wendy's, which are undisputably City-owned and regulated.

zoning plan, even though churches were designated as Special Uses in its Zoning Code. *Id.* at 920-21. The Court found that Chicago Heights could not use its Special Use process to ban a use which had been legislatively deemed an appropriate use by its inclusion in the Zoning Code. Specifically, the Court stated:

> In general, a "special use" is a type of property use that is expressly permitted within a zoning district by the controlling zoning ordinance so long as the use meets certain criteria or conditions. 'The purpose of special uses is to provide for those uses that are either necessary or generally appropriate for a community but may require special regulation because of unique or unusual impacts associated with them.'
>
> In sharp contrast to a variance, the inclusion of a special use within a zoning ordinance 'is tantamount to a legislative finding that the permitted use is in harmony with the general zoning plan and will not adversely affect the neighborhood.'

*Id.* at 926 (quotations omitted).

In *Living Word*, the Court was primarily concerned with the blanket objection made by Chicago Heights to non-commercial uses in their business district. The Court made clear that the Chicago Heights City Council could not make "effective amendments" to Chicago Heights's zoning law by labeling all non-economic Special Uses as incompatible with current zoning, thereby eliminating them from consideration. *Id.* at 930. The Court's decision, however, was limited to broad-based or blanket decisions not to allow a certain type of Special Use regardless of individual consideration. Thus, it does not extend to those situations, such as the one before me here, where the City Council denies a specific Special Uses permit for reasons related to the use's location.

In *Living Word*, the Court provided the following standard for denial of a Special Use request:

8

> the appropriate standard to be used in determining whether a requested special exception use would have an adverse effect and, therefore, should be denied is whether there are facts and circumstances that show that the particular use proposed at the particular location proposed would have any adverse effects above and beyond those inherently associated with such a special use exception irrespective of its location within the zone.

*Id.* at 929.

The standard articulated by the Court focused on the individual nature of each Special Use permit determination and forces the decision maker to articulate reasons why a proposed Special Use is inappropriate given its specific circumstances. This is exactly what the City Council did when it considered Plaintiffs' Special Use permit for a drive-through window. It looked at the list of nine Special Use Standards articulated in § 1002.2 of its Zoning Code and applied them to Plaintiffs' drive-through window. The fact that the City Council made statements concerning the compatibility of this particular drive-through window with the surrounding neighborhood does not mean the City Council violated *Living Word*, which expressly permits administrative bodies to consider compatibility so long as it is done on an individual basis. *Id.* at 929.

In the end, both the Planning Commission and the City Council determined that, given the specific location of the Wendy's drive-through window, certain Special Use Standards were not met without the hours of operation and truck access/parking restrictions. This individual consideration is evidenced by the numerous public meetings held to discuss the drive-through window and by the findings of fact issued by the City Council, detailing their findings as to each Special Use Standard.

Since I have determined that the City Council followed the proper process in considering Plaintiffs' request to remove restrictions from its Special Use permit, I consider whether the City

Council's denial was against the manifest weight of the evidence. Under the City's Zoning Code, the burden is on the applicant to demonstrate compliance with the nine enumerated standards. (Geneva Zoning Code § 1002.2(F)).

## 1. Special Use Standard 2

Special Use Standard 2 requires the applicant to show that the value of the adjacent and nearby properties will not be diminished by the proposed use. To establish that eliminating the hours of operation and truck access/parking restrictions would not negatively impact the value of neighborhood properties, Plaintiffs presented realty evidence showing that since the Wendy's opened, the property values in the Glengarry subdivision had risen and the average time to sale had decreased.[3] Plaintiffs also presented evidence that other businesses in the near vicinity, a gas station and a bank, had been operating 24-hour drive-through businesses and that somewhat farther away a Burger King and McDonald's had been operating unrestricted drive-through windows without any perceivable impact to the surrounding residential community.

The City Council found that the evidence submitted by Plaintiffs failed to demonstrate the adjacent homes would not be adversely affected by a lengthening of the hours of operation and an increase in truck access/parking. First, it criticized the realty data for being too static and for failing to predict the effects of lifting the restrictions. In the City Council's opinion, the realty information demonstrated that the imposed restrictions were appropriate measures, which had prevented the drive-through window from diminishing home values in the adjacent

---

[3] The fact that purchasers of nearby residential property were aware of the future use of Plaintiffs' property as a Wendy's with a drive-through window is irrelevant to the City Council's refusal to lift the conditions from Plaintiffs' Special Use permit. Plaintiffs are obligated to demonstrate compliance with the nine Special Use Standards, regardless of the residents' state of knowledge.

10

neighborhood. (Geneva Resolution No. 2001-29). Second, the City Council criticized Plaintiffs' comparison of their property to the nearby and unrestricted Burger King and McDonald's. The City Council found those properties to be distinguishable from Plaintiffs' property because the Burger King and McDonald's have direct traffic access to and from Route 38, a major thoroughfare, unlike the side street/neighborhood access to Plaintiffs' property, and because the Burger King and McDonald's are not adjacent to any residential areas. (Geneva Resolution No. 2001-29). Third, the City Council found that the nearby bank and gas station were also distinguishable because they are also farther away from the residential area. (Geneva Resolution No. 2001-29). Additionally, the City Council found that the restriction on truck parking for the side streets helped protect home values by decreasing parking and traffic congestion. (Geneva Resolution No. 2001-29).

Given the weak and retrospective nature of Plaintiffs' evidence, I cannot find the City Council's determination was against the manifest weight of the evidence. As noted by the City Council, Plaintiffs did not present any evidence to show what kind of impact changing the restrictions could or would have on property values in the adjacent neighborhood. To definitively show neighboring home values would not be diminished, Plaintiffs would need to produce evidence with some sort of predictive value. Since Plaintiffs did not do so, I affirm the City Council's findings.

### 2. Special Use Standard 3

Special Use Standard 3 requires the applicant to show that the use will not substantially or unduly increase traffic, traffic congestion, or on-street parking demand in the use's immediate vicinity. In an attempt to establish Special Use Standard 3 had been met, Plaintiffs submitted late night car counts from their West Chicago Wendy's location and current traffic patterns at their

11

Geneva Wendy's location. Again, the City Council criticized Plaintiffs' evidence because it did not address how changing the hours of operation and truck access/parking would affect overall traffic patterns and congestion. (Geneva Resolution No. 2001-29). Specifically, the City Council noted that while the car count at Plaintiffs' West Chicago Wendy's location had some predictive value, the Plaintiffs did not establish that it was a comparable property, making the estimated increase in traffic of one car every 7 minutes somewhat unreliable. (Geneva Resolution No. 2001-29). As for lifting the truck parking restrictions to allow for thirty-minute street parking, the City Council relied on the Chief of Police's opinion that increased truck traffic and parking would most certainly cause more congestion. (Geneva Resolution No. 2001-29).

With regards to the effect of extended hours on traffic, this is somewhat of a close call. The minimal data submitted by Plaintiffs suggests that the increase in traffic would be small. However, even a relatively small number of cars and especially trucks can cause a large disturbance in a residential neighborhood. Because Plaintiffs' data concerning the actual increase in nighttime traffic and the effect of that increase is somewhat uncertain, I can't say that the City Council's decision was against the manifest weight of the evidence. With regards to the increased traffic from allowing truck access and parking, I do not think any reasonable person could disagree with the City Council's determination that allowing truck access/parking would increase existing traffic congestion.

### 3. Special Use Standard 4

Special Use Standard 4 requires the applicant to show that the use has been designed to provide adequate ingress and egress to minimize congestion on public streets. The Plaintiffs did not submit any evidence on the ingress and egress during the public hearings. The City Council, on its own accord, raised safety and vehicle conflict concerns over Plaintiffs' request for thirty-

12

minute truck parking on Bank Lane. (Geneva Resolution No. 2001-29). These concerns seem fairly straightforward– if the street from which the Wendy's is accessed is more congested because of truck parking, then entering or leaving the property may become more difficult and potentially more dangerous. Since Plaintiffs didn't submit any evidence showing that access to their property would remain unaffected by the thirty-minute truck parking, I find that the City Council acted reasonably in determining that this standard had not been met.

### 4. Special Use Standard 5

Special Use Standard 5 requires the applicant to show that the use will not adversely affect or change the character of the area in which it is located. Plaintiffs argued that the character of the surrounding area would not be affected by the extended hours and increased truck access/parking because the surrounding area consists primarily of other business uses. The City Council found that the Wendy's was decidedly closer to the residential area than the other businesses and, thus, would have the greatest impact the on character of the adjacent residential neighborhood. (Geneva Resolution No. 2001-29).

Out of all the Standards, this one appears to have received the least attention from both sides. This is understandable give the amorphous nature of "character" judgments in general. In this case, a character judgment is made even more difficult because the property is located near the border between two differently zoned areas. A Wendy's with later hours of operation and more truck traffic is probably consistent with the gas stations, restaurants, and retail stores located in the heart of the business district. But, the same Wendy's is probably not consistent with a purely residential neighborhood like the Glengarry subdivision. Because this criteria is so subjective, it will always create grounds on which reasonable people can differ. Thus, I cannot

13

find the City Council acted against the manifest weight of the evidence in finding that Special Use Standard 5 was not met.

### 5. Special Use Standard 7

Special Use Standard 7 requires the applicant to show that the property has adequate utility, drainage, and parking for the proposed use. Here, the City Council found that the Wendy's did not have adequate parking facilities to accommodate large trucks, necessitating Plaintiffs' request for thirty-minute truck parking on Bank Lane. (Geneva Resolution No. 2001-29). Plaintiffs' only answer to the City Council's concern seems to miss the point; Plaintiff states: "the fact that truck parking cannot be provided on site is virtually irrelevant because only delivery trucks can turn north onto Whitfield Drive from Bank Lane and such parking can be had within Bank Lane or on Whitfield Drive." (Plaintiffs. Mem. P. 19). In this statement, Plaintiffs imply that adequate truck parking is not available without the use of City streets. Since Plaintiffs have not established that there is adequate parking to accommodate truck parking on site, I cannot find the City Council acted unreasonably when it determined that Special Use Standard 7 had not been met.

### D. Invalidity of the Zoning Ordinance

On pages twenty-one through twenty-six of their Memorandum in Support of Summary Judgment, Plaintiffs make the somewhat out-of-place argument that the City's Zoning Code is unconstitutional both on its face and as applied. When filing these cross-motions for summary judgment, Plaintiffs and Defendants limited the scope of their arguments to Count VII of Plaintiffs' Complaint. (Pls.' 1st Mot. Part. Summ. J. P. 1; Defs' Mot. Summ. J. P. 1). Count VII is itself limited to a petition for a common law *writ of certiorari* and does not extend to Plaintiffs' constitutional claims, which appear individually in Counts I, III, and IV of their

Complaint. Their lack of relevance here is likely reflected in Defendants' single paragraph response. Since Plaintiffs' constitutional claims do not fall within the intended scope of this motion, I decline to consider them at this time.

### III. Conclusion

Since I have found that the City Council's determination that Special Use Standards 2, 3, 4, 5, and 7 have not been met was not against the manifest weight of the evidence, I affirm its findings and grant summary judgment on Count VII of Plaintiffs' Complaint.

For the reasons stated herein, Plaintiffs' Motion for Partial Summary Judgment is DENIED and Defendants' Motion for Partial Summary Judgment is GRANTED.

ENTER:

James B. Zagel
United States District Judge

DATE: NOV 1 8 2004